GRANITE BITUMINOUS PAVING COMPANY, Respondent, v. THOMAS WARD McMANUS et al., Appellants.

**Springfield Court of Appeals, June 6, 1910.**

1. **MUNICIPAL CORPORATIONS: City of St. Louis: Charter: Public Improvements.** The charter of the City of St. Louis is fundamental law and all authority for making public improvements is specifically granted therein. Wherever authority is given by the charter for the doing of a particular act, and the method of doing it is prescribed, such authority and method prevail over anything to the contrary on the subject that may be provided by ordinance of the municipal assembly.

2. **———: ———: ———: ———: Assessment Districts: Taxbills.** Section 14 of article 6 of the charter of the city of St. Louis defines the assessment district for any given street improvement and prescribes how it shall be established. Any act of the municipal assembly attempting by ordinance to change the district so fixed by the charter would be a nullity; so, if the charter has been followed in fixing the assessment district for the improvement, neither an ordinance provision nor the absence of one can change the liability of a property-owner for payment of a taxbill issued for the improvement.

3. **———: ———: ———: ———: Determination of "Lot" for Special Assessment.** For the purpose of special assessment under the charter of the city of St. Louis, the existence of a

144 App—38

"lot" is not determined wholly from official plats. Within the letter and meaning of the charter, this fact may be determined by usage. If the owner uses the property in disregard of lot lines, as shown on the plats thereof, then such lots and parts of lots as he uses together constitute one "lot" or "parcel of ground" for the purpose of special assessments.

4. **TAXBILLS: City of St. Louis: Prima-Facie Evidence: Designation of Place of Payment.** The provision of the charter of the city of St. Louis that a place of payment should be designated in special taxbills issued is held to be directory merely and, under the facts in this case, the omission of the place of payment is held not to invalidate the bill nor to prevent its introduction as prima-facie evidence. In this case, it appeared that demand was made upon defendant for payment of the taxbill and there was no proof that injury resulted to defendant from failure to comply with this provision.

5. ———: ———: ———. A special taxbill issued in pursuance of the charter of the city of St. Louis in payment for street *improvements*, when certified by the proper authorities, is prima-facie evidence of all the necessary facts to create a lien upon the property affected, and to entitle the holder in a suit thereon to a judgment foreclosing and enforcing the same.

6. **STATUTORY CONSTRUCTION: Mandatory and Directory Provisions.** Whether a provision is mandatory or directory is to be determined by the character and purpose of the statute. If no substantial rights depend upon it and no injury can result from ignoring it, and the purpose of the Legislature can be accomplished in a manner other than as prescribed therein and substantially the same results obtained, then the statute will generally be regarded as directory.

7. **MUNICIPAL CORPORATIONS: Dedication of Streets: Plat Filed Subject to Deed of Trust: Taxbills.** The owner of property in the city of St. Louis, while it was subject to a deed of trust, filed a plat thereof dividing said property into lots, blocks and streets. Subsequently the property was sold under the deed of trust and the equity of redemption foreclosed. The purchaser at the sale kept the property intact and did nothing to show a dedication on his part of the streets as shown by the plat. *Held*, that the plat of the property became void and was of no effect upon the foreclosure sale and that the public received nothing by reason of the filing thereof. *Held, further,* that the property was subject to taxation as a whole and that a taxbill issued against it for street improvement was not invalid because the assessment was against the whole tract and not against the lots as shown by the plat.

8. **STREETS: Dedication: Statutory and Common-Law Dedication.** A statutory dedication of a street must be by the owner of the fee and must be accepted by the public. A common-law dedication likewise requires an abandonment on the part of the real owner and acceptance and user by the public. A public street and the responsibilities involved cannot be imposed upon the public against its will.

Appeal from the St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*R. M. Nichols* for appellant.

(1) The approval of the plat by Charles Pfeifer, engineer, and the recording of same and the assessment of taxes in accordance with the said plat from 1877 until it was shown by the plaintiff to have been assessed in feet in 1898, was a complete acceptance by the city of the subdivision, if an acceptance was needed, but such acceptance by the city was not necessary to make out a dedication, and, when once dedicated, is irrevocable, whether used by the city or not. Muschmann v. St. Louis, 121 Mo. 536; Funk v. St. Louis, 122 Mo. 140; Heits v. St. Louis, 110 Mo. 625; Archer v. Saline City, 93 Cal. 43, 28 Pac. 839; Reed v. Board of Education, 73 Mo. 295; Bank v. Ogden, 69 U. S. 57; Griffin v. Olathe, 44 Kan. 348, 24 Pac. 470. (2) The fact of the property being incumbered by a lien antedating the subdivision did not prevent Baker from making such subdivision and dedication, and the approval by the mortgagee by the payment of taxes and receiving conveyances according to the subdivision and dedication, and confirming the dedication before this court, were as effectual as if Baker had an indefeasible fee. Pry v. Mankedick, 172 Pa. St. 535, 34 Atl. 46; Vreeland v. Torry, 34 N. J. E. 312; Hague & Yost v. West Hoboken, 23 N. J. E. 354; Skrainka v. Allen, 2 Mo. App. 387; Wyo-

ming v. Bell, 24 Grant's Ch. (U. C.) 564; Roberts v. Turnpike, 98 Tenn. 133; Longworth v. Sedevic, 165 Mo. 221; Field v. Marks, 125 Mo. 503. (3) Assessment as a whole is void when the property is divided into lots. Sedalia v. Gallie, 49 Mo. App. 392; Riley v. Stewart, 50 Mo. App. 594; Fowler v. St. Joe, 37 Mo. 228; State v. Provenchere, 92 Mo. 66. (4) Only bills made out in accordance with the provisions of the charter create a prima-facie case. Therefore the omission to state in the bill a place of payment would destroy the prima-facie case made by the charter and would render the bill immature because the defendant has a right to know where to pay the bill. Amended Charter, sec. 24; Eyermann v. Payne, 28 Mo. App. 72; Heman v. McLaran, 28 Mo. App. 654; St. Joseph v. Forsee, 115 Mo. App. 510. (5) Section 24 of the amended charter is mandatory that "in every such taxbill there shall be designated" a place of payment. 26 Ency. Law, 669; State ex inf. v. Talty, 166 Mo. 559; West Wis. R. Co. v. Foley, 94 U. S. 103; 25 Ency. Law (2 Ed.), 633; O'Rear v. Crum, 135 Ill. 294, 24 N. E. 1097; Bank v. Neal, 13 Mont. 382, 34 Pac. 180. (6) Section 14 of article 6 of the charter provides that the Board of Public Improvements shall define by ordinance the district to be assessed. An ordinance that does not define such assessment district is illegal. St. Louis to use v. Clemens, 52 Mo. 133; Haag v. Ward, 186 Mo. 325; Meier v. St. Louis, 180 Mo. 391; Construction Co. v. Shovel Co., 211 Mo. 524; State ex rel. v. St. Louis, 211 Mo. 591; Bayha v. Taylor, 36 Mo. App. 427; Barton v. Kansas City, 110 Mo. App. 31; Springfield ex rel. v. Schmook, 120 Mo. App. 41; Excelsior Springs to use v. Ettenson, 120 Mo. App. 215; St. Louis v. Brincworth, 204 Mo. 280.

*Sturdevant & Sturdevant* for respondent.

(1) If the charter has been followed in fixing the assessment district for this improvement, neither an ordinance provision or the absence of one on the subject is of any consequence. Charter St. Louis, sec. 16, art. 6; Meier v. St. Louis, 180 Mo. 391; State ex rel. v. St. Louis, 183 Mo. 230. (2) In the absence of proof that injury resulted therefrom, the failure to strictly comply or to comply at all with this provision cannot be argued as a defense to the action on the taxbill, where demand of its payment was made on defendant before suit in a writing notifying the defendant where to pay the same, as was done in this case. Southerland Stat. Const. (2 Ed.), secs. 611, 613; Field v. Barber Co., 117 Fed. 925; St. Louis v. Denone, 44 Mo. 136; State ex rel. v. Railroad, 113 Mo. 297; 27 Am. and Eng. Ency. Law (2 Ed.), 85. (3) A statutory dedication must be by the owner of the fee, and must be accepted by the public. A common-law dedication likewise requires an abandonment on the part of the real owner and acceptance and user by the public. Without these two elements, concurring for a required time, there can be no dedication at common law. 13 Cyc., 442; Kansas City M. Co. v. Riley, 133 Mo. 574; McBeth v. Nabue, 69 Mo. 642; Sarcoxie v. Wild, 64 Mo. App. 403; Donahue v. State, 112 N. T. 142; Irvin v. Dixon, 9 How. (U. S.) 10; St. Louis v. University, 88 Mo. 155; R. S. 1899, sec. 5375.

STATEMENT.—This appeal is from a judgment of the St. Louis City Circuit Court, in favor of plaintiff, in a suit upon a special taxbill issued by the officers of said city to plaintiff in payment for labor and material furnished in the improvement of a public street.

The property affected by the lien of the taxbill sued on is the south half of city block No. 3920 in said city, which fronts on Laclede avenue, the street improved by plaintiff. This block is rectangular in form, having its

greater length from east to west. The block is 1366.17 feet in length and 446.38 in depth. It is bounded on the north by Pine street, east by Vandeventer avenue, south by Laclede avenue, and west by Sarah street.

The property in this district was assessed by the officials of the city of St. Louis, charged with that duty, as acre property, and the assessment district established in accordance with the provisions of section 14 of article 6 of the charter of the city of St. Louis, which fixes the boundaries of the district to be assessed for any given improvement.

Under ordinance No. 21,502, authority was given to improve Laclede avenue from Grand avenue to Kingshighway boulevard. The taxbill sued on was issued in payment for the improvement of Laclede avenue, between Vandeventer avenue on the east and Sarah street on the west, the same being a portion of the street authorized to be improved under the said ordinance. Laclede avenue is an east and west street, and Vandeventer avenue and Sarah streets are both north and south streets.

The defendant's property involved in this special taxbill abuts upon the north side of Laclede avenue all the way from Vandeventer avenue on the east to Sarah street on the west. Under said section 14 of article 6 of the city's charter, the assessment district taxed for payment of the improvement of that portion of Laclede avenue between those two streets is formed by drawing a line midway between Laclede avenue and the next parallel street on the north thereof, which is Pine street. The assessment district established in accordance with the mandate of the charter would, therefore, be bounded as follows:

Vandeventer avenue on the east, Laclede avenue on the south, Sarah street on the west, and on the north by a line midway between Laclede avenue and Pine street, the next parallel street north, such midway line

being distanced 283.19 feet from and north of said La-
clede avenue.

The petition filed by plaintiff is in the usual form
in such matters. It alleges the description of the prop-
erty covered by the taxbill, and describes the part of
the street improved in payment for which the taxbill
was issued, and gives a description of the property in-
cluded within the assessment district for such part of
the improvement. It alleges also the proceedings of the
Board of Public Improvements of St. Louis, and the
action of the municipal assembly of said city, setting
out in full the ordinance passed by the said assembly
authorizing the improvement. Also, the assessment of
the property and the issue of the taxbill, the contract
for the work and number thereof, and the performance
of the work and the furnishing of material contracted
for, by the plaintiff, and the acceptance of same by the
city, and the delivery of the taxbill to plaintiff in pay-
ment therefor, etc. Also the failure of the defendant
to pay the first instalment due upon said taxbill and
the maturity thereof, and judgment was asked for the
amount of the taxbill and for a lien upon the property
described.

The answer of the defendant is a general denial,
and an allegation to the effect that the property in-
cluded in the taxbill is platted into lots, and that for
that reason the property should not have been assessed
as one tract, but that each lot should have been as-
sessed separately, and taxbills issued accordingly. For
a further defense, it was alleged that no place of pay-
ment was designated on said taxbill as, it is alleged,
the charter requires.

The reply denies all the allegations of the answer.
It also alleges that the property assessed is unimproved
or practically without improvement, and that if the said
property was ever legally or lawfully laid or platted or
subdivided, according to law—which fact is denied—or
that if any such subdivision now legally exists, that the

said lots are adjacent and contiguous, and have been in use and occupation as one property, and that by the manner of his use of said realty, the defendant has long since disregarded such artificial division of same into lots, and that defendant is now estopped to claim otherwise, and has constituted and treated said realty as a single lot, and that the taxbill is lawfully and properly assessed and issued against the same as a single lot, and that the realty described in the said taxbill is a single lot. Furthermore, that the provision in section 24 or article 6 of the charter of the city of St. Louis that there shall be designated in said taxbills, either the city treasurer, or, at the option of the persons entitled to such taxbills, the name of some bank or trust company located and doing business in the city of St. Louis, to whom the payment of such bills shall be made, is directory, and not mandatory, and that the failure to conform to same in said taxbills does not vitiate or invalidate said taxbills; and further, that the notice of the issuance of said taxbill as provided in section 25 of article 6 of the city charter, authorized to be served on the owner by the holder of said taxbill, may be served by the city marshal, and that such notice was given by plaintiff to defendant and service thereof made upon defendant by the city marshal on the 10th day of December, 1904, and that in said notice, the Franklin Bank, located and doing business in St. Louis, was therein designated as a place of payment thereof, and that at the time of the issuance of said special taxbill, the National Bank of Commerce in St. Louis was registered and designated in the office of the city comptroller as the place of payment.

The taxbill, after the signatures of the president of the Board of Public Improvements and the comptroller were duly proven to be the genuine signatures of those officials, was introduced in evidence by the plaintiff. The notice of the issuance of the taxbill, containing the proof of service thereon by the city mar-

shal, was also introduced in evidence. This was all the evidence introduced in chief by the plaintiff.

Defendant offered in evidence a plat showing an attempted subdivision and platting of the property described in the taxbill into lots and streets, bearing the date of April 28, 1877. Defendant then offered in evidence certain books from the assessor's office showing how this property was taxed for a given number of years. Also, a number of deeds of conveyance of certain lots in the tract in question, signed by Robert Baker and his wife, all of which were made in the period between 1870 and 1880. Also a number of receipts for taxes upon this property showing that the same was assessed according to its division into lots for the years 1877, 1878, 1882, 1883, 1884 and 1885. Also, two quitclaim deeds executed in 1880, conveying a part of this property. Also, a map of this tract. Also, taxbills showing the assessment of this property as acre property in the years 1879, 1880, 1881, 1886, 1893, 1894, 1896, 1898, 1899 and also in the years 1887, 1888, 1889 and 1891. The evidence also shows that the street referred to as Baker street is now Pine street.

The plaintiff introduced in evidence a deed bearing the date July 21, 1874, in which Robert Baker and his wife conveyed this property to Robert W. Powell as trustee to secure an indebtedness. Also, a trustee's deed executed on the 30th day of May, 1878, being a deed made by the said Powell, trustee, on the sale of this property to pay the indebtedness under power of sale contained therein, under which deed Camilla S. McManus became the purchaser, the present defendant being the son and heir of said Camilla S. McManus.

The evidence further shows that the title of the defendant was derived from the sale under the said deed of trust, and that the parties to whom deeds were made for separate lots of this tract, prior to said trustee's sale, lost their title and interest in the lots by reason

of such sale, but that two of the said parties afterwards deeded to McManus.

The evidence shows that the taxes assessed against this property included the north half of the block as well, and that the taxes were paid upon the strip of ground designated on the plats introduced in evidence as "West street," which is midway between Laclede avenue and Pine street, the entire block, including said West street, being 14 acres in area.

The evidence further shows that the improvements made upon the property assessed for special taxes were not substantial, and that they were put on without reference to lot lines; that this tract was frequently rented for circus purposes, and that there was also a race track on the property used for exercising and training horses, an egg shaped tract following the lines of the fence around the block and going within 500 feet of Sarah street on the extreme west, and that the block was originally fenced as one tract, a part of which fence still remains.

The trial of this case was before a jury. The court, at the close of the evidence, at plaintiff's request, gave a peremptory instruction that the jury should find a verdict for the plaintiff for the amount of the taxbill with interest at eight per cent per annum from the 10th day of January, 1905, and the jury accordingly returned a verdict for the plaintiff for $6608.51. A motion for a new trial was filed on October 31, 1905. On April 4, 1906, the death of the defendant, Camilla S. McManus (against whom the suit was instituted), was suggested, and Thomas Ward McManus, by leave of court entered his appearance as a party defendant, and the cause was revived in the name of Thomas Ward McManus, Camilla S. W. Burrows and Wm. F. Crow, trustees under the will of Camilla S. McManus, and the cause was ordered to proceed against them. On October 11, 1906, the motion for new trial was over-

ruled, and an appeal has been duly perfected to this court.

NIXON, P. J.—I. It will be seen from the statement of facts that this is an action by the respondent, commenced against Camilla S. McManus, on a certain special taxbill issued by the officers of the city of St. Louis under its charter and ordinances for work done by plaintiff in the reconstruction of Laclede avenue from Grand avenue to Kingshighway boulevard, in which it is claimed that such special taxbill is a lien upon certain lands owned by the defendant fronting on Laclede avenue between Grand avenue and Kingshighway and between Vandeventer avenue and Sarah street. This tract of land is described in the taxbill as follows: "A parcel of realty in block No. 3920 of the city of St. Louis, having an aggregate front of 1366.17 feet by a depth of 223.19 feet; bounded north by the boundary line of the improvement district hereinafter mention, east by Vandeventer avenue, south by Laclede avenue, and west by Sarah street.

The defense set up in the answer was that the assessment for the improvement for which the special taxbill was issued was irregular and void and that the taxbill was not made out in accordance with the provisions of the charter, and that therefore, the plaintiff by offering the taxbill in evidence, did not make out a prima-facie case of liability of the defendant. A further defense was urged that the city charter required that the Board of Public Improvements should define by ordinance the district to be assessed, and that an improvement district not defined by ordinance is void.

The special taxbill upon which the suit was brought is as follows:

*"Special Taxbill.*

"No. 14,502.

"Office of the President of the Board of Public Improvements.

"St. Louis, Nov. 26, 1904.

"Camilla S. McManus, owner to Granite Bituminous Paving Company (contractor), Dr., for work done on Laclede ave. from Grand ave. to Kingshighway boul., chargeable against lot No. ——— in city block No. 3920, said ground having an aggregate front of 1366.17 feet, by a depth of 223.19 feet; bounded north by the boundary line of district, east by Vandeventer ave., south by Laclede ave., and west by Sarah street, under authority of the charter and of ordinance No. 21,502, and of contract No. 6,901:

"Total cost of reconstruction with bituminous macadam .. .................$73,388.34
Amount chargeable against property front-
    ing on improvement—1-4 of cost ..... 18,347.10

Amount chargeable against area of district
    —3-4 of cost ...................... 55,041.24
Total frontage taxed, 17,631.62 feet;
    Rate per front foot ........$1.04058
    Front feet of lot taxed, 1,366.17...... 1,421.61
Total area in district taxed,
    3,488,961 square feet:
    Rate per 100 square feet....$1.57758
    Area of lot taxed, 304,915 ........... 4,810.28

                               $  6,231.89"

(Then follows the certificate of the president of the Board of Public Improvements of St. Louis.)

The charter of the city of St. Louis is fundamental law and all authority for making public improvements is specifically granted therein. Its provisions, adopted by the people of the city under the authority of the

Constitution, have all the force of legislative enactments. Wherever authority is given by the charter for the doing of a particular act and the method of doing it is prescribed, such authority and method prevail over anything to the contrary on the subject that may be provided by ordinance of the municipal assembly.

Section 14 of article 6 of the city charter specifically defines the assessment district for any given street improvement and prescribes how it shall be established. Any act of the municipal assembly attempting by ordinance to change the district so fixed would be a nullity; and any act of the assembly fixing the same district otherwise than prescribed by the charter would be surplusage. So, if the charter has been followed in fixing the assessment district for the improvement in question, neither an ordinance provision nor the absence of one can change the liability of the appellant. [Section 14, article 6, Charter of St. Louis, clause three; Meier v. City of St. Louis, 180 Mo. 391, 79 S. W. 955; State ex rel. v. City of St. Louis, 183 Mo. 230, 81 S. W. 1104.]

II. For the purpose of special assessments under the charter, the existence of a "lot" is not determined wholly from official plats. Within the letter and meaning of the charter this fact may be determined by usage. If the owner uses the property in disregard of lot lines, as shown on the plats thereof, then such lots and parts of lots as he uses together, in disregard of lot lines, constitute one "lot" or "parcel of ground" for the purpose of special assessements.

The last clause of section 14, article 6, of the charter provides: " 'Lot' Defined: The word 'lot' as used in this section, shall be held to mean the lots as shown by recorded plats of additions or subdivisions, but if there be no such recorded plat, or if the owners of property have disregarded the lines of lots as platted, and have treated two or more lots or fractions thereof as one lot, then the whole parcel of ground or lots so

treated as one shall be regarded as a lot for the purposes hereof." [Meier v. City of St. Louis, supra; State ex rel. v. City of St. Louis, 211 Mo. 591, 111 S. W. 89.] The word "lot" may include acreage tracts, and has been held to include tracts of two, fourteen and even sixty-five acres. [City of Salem ex rel. v. Young, 125 S. W. 857, 861.]

The owner of this tract or lot had used the same in disregard of platted lot lines. The property in question, together with the north half of the block had been assessed as acre property—as a fourteen acre tract— since about the year 1886, and the taxes were paid upon it as such by the defendants from that time until the present. They have, therefore, without protest, been paying taxes on a strip of ground known as "West avenue." The evidence tends to show that this so-called "avenue" has never been a public street and has never been recognized as such by the owner since a trustee's sale in 1878 nor used by the public for street purposes at any time. A race track which extended over the area involved in this assessment was laid out and used for many years by the owner, the present defendant, without reference to "West avenue," or to platted lots. The ground was also used for circus purposes year after year without reference to street or lots. And Camilla Mc-Manus used it as a pasture in the same way. All of it was inclosed—so far as inclosed at all, under one fence and as one tract. This is true as to the entire tract, including the north half, which is not involved in this suit. The fact that some quitclaim deeds were made to Camilla McManus—in which the lots as platted were described—in order to clear up the title would not change the situation in any way. There is nothing shown in this record that would preclude the defendant from asserting his title to that strip of ground, originally platted as a street and called "West avenue." It has never been used as a street and there is no fact in this record that would give the city of St. Louis any

right therein. There is no pretense that it was ever used for a day as a public thoroughfare or that the city ever exercised any control over it or assumed any responsibility concerning it. In view of these facts, it is idle to claim that this strip of ground has a single element of a *public street* and should be allowed to escape taxation.

III. The appellant claims that only taxbills made out in accordance with the provisions of the charter create a prima-facie case, and that, therefore, the omission of a designated place of payment in the taxbill would render the bill immature because the appellant had a right to know where to pay the bill.

As the taxbill did not designate a place of payment, the question is presented whether such provision of the charter is mandatory or directory. It is to be observed that there are no negative terms in connection with this charter provision as to place of payment; in fact, nothing whatever is made to depend upon it. The provisions to make improvements, levy the assessment, and issue a taxbill for its enforcement, are all quite independent of this clause pertaining to the place of payment, and are in no sense dependent or conditioned upon a compliance therewith.

The distinction between mandatory and directory enactments has often been under consideration by the courts. Into which of these classes any given statute falls is to be determined by its character and purpose. If no substantial rights depend upon it and no injury can result from ignoring it, and the purpose of the Legislature can be accomplished in a manner other than as prescribed therein and substantially the same results obtained, then the statute will generally be regarded as directory. The provision in section 24, article 6, of the charter as to the place of payment being designated in the taxbill should be construed as directory as it is a provision upon which no substantial authority or right

of either the city or the owner of the property or the contractor depends. The authority of the city, the rights and liabilities of the property-owner, and the rights of the contractor are all definitely fixed in other provisions of the charter, and all are quite independent of this provision. As the taxbill was issued for the contractor and delivered to him and not the owner of the property, it might well be held that designation in it of a place of payment was for the contractor's benefit which he might waive.

In the absence of any proof in this case that injury resulted therefrom, the failure to strictly comply with this provision ought not be held as a defense to an action on the taxbill, where demand of its payment was made on the defendant before suit, in writing, notifying the defendant where to pay same, as was done in this case. [Lewis' Sutherland on Statutory Construction (2 Ed.), sections 611 and 613; City of St. Louis v. De Noue, 44 Mo. 136; State ex rel. v. Hannibal & St. J. R. Co., 113 Mo. 297, 21 S. W. 14; 27 Am. and Eng. Ency. Law (2 Ed.), 85.]

IV. The gravamen of defendant's defense to this cause of action is that the property in controversy was wrongfully assessed because the property was on the 28th day of April, 1877, lawfully dedicated to public use, platted and laid out in streets, alleys and town lots by one Robert Baker.

The plaintiff contends that said dedication was at all times void, irregular and of no effect for the reason that at the time of the filing of said pretended plat, the said Robert Baker had no power, no capacity and no title sufficient to make a legal dedication of said property to public use. Prior to said pretended dedication, about the year 1874, the said Robert Baker and his wife had conveyed the legal title of said property to one Robert W. Powell, by a deed of trust duly recorded, thus reserving to themselves only the conditional de-

feasible right of redemption. Therefore at the time of said pretended dedication, the said Robert W. Powell was the owner of the legal and fee simple title, subject to the right of redemption of the said Baker, and nothing more. However regular said pretended plat may be with reference to the technical requirements of the statutes in force in this State at the time it was filed, said Baker was incompetent and held no title upon which he could base a valid dedication. No action on the part of the State or the public could enlarge his power or title. Furthermore, subsequent to said pretended plat, the said Baker forfeited all his right, title and equity of redemption by his failure to comply with his obligation, and thereupon by sale of said property under the deed of trust, said equity or redemption was forever barred and foreclosed, and the said Baker's right of redemption extinguished. Hence he conveyed nothing to the public and the public received nothing and the pretended plat became void and still remains void so far as the title to the land is concerned.

A dedication of land to public use as a street can be accomplished in only two ways—either under the statute or according to the common law. A statutory dedication must be by the owner of the fee and must be accepted by the public. A public street and the responsibilities involved cannot be imposed on the public against its will. A common-law dedication, likewise, requires an abandonment on the part of the real owner and acceptance and used by the public. Without these two elements concurring for a required time, there can be no dedication at common law. "As it is essential that to be valid a dedication must create a use unlimited as to the time of its duration, and as it is the very essence of a dedication that the owner of the land has consented to abandon it, it is a necessary conclusion that no one except the owner of an unlimited estate or an estate in fee

144 App—39

simple can make a dedication of land." [13 Cyc. 442.] "The same rule applies in a statutory dedication of land for a street, that does in the conveyance of land by deed. The dedicator cannot pass by dedication what he does not own any more than a grantor in a deed can pass the title to land which he does not own in fee, and no one not holding under the dedicator is not estopped to deny his title to the property thus attempted to be dedicated." [Kansas City Milling Co. v. Riley, 133 Mo. 574, 584, 34 S. W. 835. See also McBeth v. Trabue, 69 Mo. 642; City of Sarcoxie v. Wild, 64 Mo. App. 403; City of St. Louis v. St. Louis University, 88 Mo. 155; Irvin v. Dixon, 9 How. (U. S.) 10; McGrath v. City of Nevada, 188 Mo. 102, 86 S. W. 236.] As the property was sold out in 1878, under a deed of trust antedating the plat, all interest conveyed and the subdivisions attempted to be established by the plat were extinguished and the fee invested in the purchaser free therefrom, including the strip designated on the plat as "West avenue." And, as no act has been performed by the present owner (the purchaser under said deed of trust) which would amount to a dedication of the property either under the statute or at common law, it must follow that the officials of the city acted within their authority and duty in assessing it as acre property.

V. The paragraph of section 25 of the charter, making taxbills prima-facie evidence when made out in accordance with the charter, make the taxbill prima-facie evidence of four facts which are stated in the charter as follows: (1) "That the work and material charged in such bills shall have been furnished;" (2) "Of the execution of the work;" (3) "Of the correctness or rates of price, amount thereof;" and (4) "Of the liability of the person therein named as the owner of the land, charged with such bill, to pay the same."

A special taxbill issued in pursuance of the charter of St. Louis, in payment for labor and material fur-

nished by the contractor in improving a public street of the city, when certified by the proper authorities thereof is prima-facie evidence as above stated of all the necessary facts to create a lien upon the property affected and to entitle the holder, in a suit thereon, to a judgment foreclosing and enforcing the same. And such taxbill, when properly identified and introduced in evidence, establishes a prima-facie case in favor of plaintiff which can only be overcome by proof offered by defendant of facts which destroy its validity or regularity. [Section 25, article 6, Charter of St. Louis; Heman v. Farish, 97 Mo. App. 393, 71 S. W. 382; Cushing v. Powell, 130 Mo. App. 576, 579, 109, S .W. 1054.]

In this case, justice will be promoted and no public or private right invaded by applying the above equitable rule that the charter provision as to the taxbill designating a place of payment is merely directory. To defeat the present taxbill on that ground would subserve no good purpose, but would deprive the plaintiff of its just claim for material furnished and labor faithfully performed for which it is entitled to compensation under the contract and of which the defendant's property has received the benefit in enhancement of its value. The officers of the city, charged with such responsibility, have faithfully and properly discharged their duties in assessing the tax for this improvement, and the same could not have been done otherwise without a violation of the plain terms as well as the spirit of the charter.

Finding that no material error was committed and that the judgment was for the right party, the same is hereby affirmed. All concur.